# IN THE SUPERIOR COURT OF DELAWARE

| | | |
|---|---|---|
| TAYLOR TIGHE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. NO.: N17C-10-122 AML |
| | ) | |
| HECTOR CASTILLO, and | ) | |
| BALDOR EXPRESS | ) | JURY TRIAL OF |
| TRANSPORTATION CO., LLC, | ) | TWELVE DEMANDED |
| | ) | |
| Defendants. | ) | |

Submitted: August 31, 2020
Decided: November 12, 2020

## ORDER

## Upon Defendants' Motion for Partial Summary Judgment: DENIED

Plaintiff seriously was injured in a multi-vehicle accident when her disabled vehicle was struck by a tractor-trailer driven by Hector Castillo, who was operating the truck on behalf of his employer. Plaintiff contends punitive damages are appropriate in this case because Castillo operated the vehicle in wanton disregard for other's safety, and his employer failed to train or terminate him despite what Plaintiff characterizes as an "abysmal" driving record.

Defendants seek summary judgment on Plaintiff's punitive damages claims, arguing Plaintiff has failed to adduce evidence from which a jury reasonably could conclude either Castillo's or his employer's conduct rose to a level necessary to support a punitive damages award. Defendants' motion requires the Court to

1

determine whether (i) based on the record the parties presented, no reasonable jury could conclude Castillo or his employer consciously disregarded others' safety or acted in a willful and wanton manner, and (ii) a jury can award punitive damages against Castillo's employer if the jury concludes Castillo merely was negligent. For the reasons that follow, Defendants are not entitled to summary judgment because the record, viewed in a light most favorable to Plaintiff, could permit a jury to award punitive damages against both defendants.

**FACTUAL & PROCEDURAL BACKGROUND**

1. Unless otherwise noted, the following facts are drawn from the record the parties provided in connection with the summary judgment motion. On December 1, 2016 at approximately 6:18 am, Plaintiff was traveling southbound in the left center lane on Interstate 95 ("I-95") near Newport, Delaware. George V. Henry was traveling on I-95 in the center lane in a passenger vehicle. James Loar was in the left center lane operating a tractor-trailer on behalf of Western Express.

2. Loar and Henry sideswiped each other (Collision 1). As a result of Collision 1, Henry swerved into the left center lane directly in front of Plaintiff's vehicle. Plaintiff attempted to merge into the far left lane to avoid a collision but failed and collided with the back left side of Henry's vehicle (Collision 2).

3. Collision 2 caused Plaintiff's car to spin out. It came to rest in the center lane of I-95, facing toward oncoming traffic. Her vehicle was disabled, and Plaintiff

2

put her hazard lights on. Plaintiff's vehicle had been disabled for approximately four minutes when Defendant Castillo approached in a tractor-trailer he was operating on behalf of Defendant Baldor Express Transportation Co., LLC ("Baldor").[1] Castillo contends he attempted to brake but was unable to avoid hitting Plaintiff's vehicle (Collision 3). The force of Collision 3 pushed Plaintiff's vehicle into an embankment. Plaintiff was inside her vehicle at all relevant times.

4. The parties dispute the exact nature of Castillo's driving record. According to Plaintiff, Castillo has been involved in at least seven other traffic accidents and has received thirteen traffic citations, ten of which were speeding violations.[2] Defendants, however, state that Castillo only has received six speeding tickets, five of which occurred in 2008 and 2009.[3] Defendants contend that, before the present incident, Castillo never was involved in an at-fault accident nor was he in any other accident resulting in personal injuries to others.[4] In fact, however, the record shows Castillo was involved in at least three driving incidents where a jury could conclude he was at fault. In 2008, Castillo struck an overpass with the roof of his trailer; according to the crash report, Castillo struck the overpass because he was driving down a ramp too fast and veered left.[5] He also had two collisions with

---

[1] Penske Truck Leasing Corporation owned and/or controlled the Baldor tractor trailer.
[2] Pl.'s Resp. at 1-2.
[3] Defs.' Reply at 1-2.
[4] *Id.* Castillo was himself injured in an accident that occurred on the George Washington Bridge in 2015, when his tractor-trailer was rear-ended.
[5] Pl.'s Resp., Ex. E.

wildlife in 2011 and 2016 and drove into a ditch in 2012.[6] Additionally, in the two years leading up to the accident, Castillo was cited multiple times for hours of service violations because he repeatedly exceeded the maximum hours he was permitted to be on the road between breaks or rest periods.

5. Baldor's response to Castillo's driving history also is in dispute. Plaintiff alleges Baldor "did nothing" to correct Castillo's driving.[7] Defendants argue Baldor in fact took action in the form of daily driving logs and regular face-to-face performance reviews.[8] Plaintiff intends to offer expert testimony to the effect that Baldor's response to Castillo's driving history did not meet minimum industry safety standards.

6. On October 10, 2017, Plaintiff filed a complaint in this Court alleging five counts of negligence against Defendants and seeking compensatory damages, special damages, punitive damages, delay damages, and costs.[9] On June 8, 2020, Baldor Express and Castillo filed this Motion for Partial Summary Judgment on the punitive damages issue. The parties then briefed and argued the motion.

---

[6] Pl.'s Resp. at 2-3.
[7] Pl.'s Resp. at 2.
[8] Defs.' Reply at 3.
[9] Plaintiff's complaint originally asserted claims against all the parties mentioned above. But, on April 26, 2019, the parties stipulated to dismiss from the action Penske Trucking Leasing Corporation. Similarly, on December 4, 2019, the parties stipulated to dismiss from the action James Loar, Western Express, Inc., and Navistar Leasing Company. The same day, the parties also stipulated to partial dismissal of the claim against George V. Henry. All these claims and parties were dismissed with prejudice. Accordingly, Castillo and Baldor are the only defendants remaining in this action.

## THE PARTIES' CONTENTIONS

7.     In the complaint, Plaintiff alleges Castillo operated his tractor-trailer in a reckless manner with willful and wanton disregard for others' safety.[10] Plaintiff further alleges that, given Castillo's driving record in the years preceding the accident, Baldor's failure to retrain or terminate him amounts to conscious disregard for the rights of others, which justifies a punitive damages award.[11] Defendants argue summary judgment is warranted as to both punitive damages claims because the evidence Plaintiff has adduced in discovery does not demonstrate that Defendants consciously were indifferent to others' safety. Baldor also argues a jury cannot award punitive damages against an employer when an employee merely was negligent.

## ANALYSIS

8.     Under Superior Court Civil Rule 56, a party is entitled to summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[12] A material issue of fact exists if "a rational finder of fact could find some material fact that would favor the nonmoving

---

[10] Pl.'s Compl. at 10-11.
[11] *Id*. at 13-14.
[12] Super. Ct. Civ. R. 56(c).

5

party in a determining way[.]"[13]   The record must be viewed in the light most favorable to the non-moving party.[14]

9.     The initial burden is on the moving party to demonstrate there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[15]  If the moving party meets the initial burden, the burden shifts to the non-moving party to show that a genuine issue of material fact is in dispute.[16] "It is not enough for the opposing party merely to assert the existence of such a disputed issue of fact[,]" and "[i]f the facts permit reasonable persons to draw from them but one inference, the question is ripe for summary judgment."[17]

## I.     The facts of record would permit a reasonable jury to award punitive damages against Castillo.

10.     Punitive damages do not seek to make the plaintiff whole but rather aim to punish and deter wrongdoing.[18]  Accordingly, punitive damages are not available for mere negligence.[19]  Instead, the defendant's conduct must demonstrate "an intent, or conscious decision, to disregard the rights of others."[20]  For a defendant's conduct to be found willful or wanton, thereby warranting punitive damages, the conduct

---

[13] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009).
[14] *Gruwell v. Allstate Ins. Co.*, 988 A.2d 945, 947 (Del. Super. 2009).
[15] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[16] *Id.* (citing *Moore v, Sizemore*, 405 A.2d 679, 680 (Del. 1979)).
[17] *Id.* (citing *Wootten v. Kiger*, 226 A.2d 238, 239 (Del. 1967)).
[18] *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987) (citing RESTATEMENT (SECOND) OF TORTS § 908 (1979)).
[19] *Id.*
[20] *Riegal v. Aastad*, 272 A.2d 715, 717 (Del. Super. 1970).

must reflect a "conscious indifference."[21]  In cases where a plaintiff argues the defendant's negligence is based on an error of judgment, the plaintiff seeking punitive damages must show that "the precise harm which eventuated [was] reasonably apparent but consciously ignored."[22]

11.     The determination of punitive damages ordinarily is an issue reserved for the trier of fact.[23]  Viewing the facts and reasonable inferences in a light most favorable to Plaintiff, a reasonable jury could find that Castillo acted with reckless indifference to other motorists' safety.

12.     Plaintiff alleges—and at least some evidence supports—that her vehicle was disabled on the road with its hazard lights engaged for approximately four minutes before Castillo collided with the car.  In that intervening period, several other vehicles avoided colliding with Plaintiff, undermining Castillo's assertion that he was paying attention and the collision was unavoidable.  Moreover, depending on the outcome of Plaintiff's pending motion for sanctions, she may be entitled to an adverse inference instruction that Castillo did not apply his brakes at all.[24]

---

[21] *Cloroben Chemical Corp. v. Comegys*, 464 A.2d 887, 891 (Del. Super. 1983) (quoting *Eustice v. Rupert*, 460 A.2d 507, 509 (Del. 1983)).

[22] *Jardel*, 523 A.2d at 531.

[23] *Eustice*, 460 A.2d at 509.

[24] Plaintiff has a pending motion for sanctions against Castillo and Baldor for failing to preserve data from the Engine Control Module (ECM), which is a vehicle's "black box" that records speed, braking, and similar driver functions.  Plaintiff claims Baldor had a duty to preserve the ECM data because litigation reasonably was anticipated after the collision, and the ECM data's relevance readily was apparent.  If Plaintiff's motion is successful, she may be entitled to an adverse inference that the ECM data would have revealed that Castillo failed to apply his brakes.

13. Castillo's driving record reveals a history of driving violations, collisions, and hours of service violations from which a jury reasonably could infer he exhibited a pattern of inattentive driving and disobedience of safety standards. Further, Plaintiff's expert, Peter A. Philbrick, intends to testify that Castillo's driving fell below the minimum safety standards when he struck Plaintiff's vehicle.[25] At this stage in the proceedings, and in light of the inferences that must be drawn in Plaintiff's favor, the Court cannot conclude Castillo merely was negligent such that punitive damages are unavailable as a matter of law.

## II. The facts of record would permit a reasonable jury to award punitive damages against Baldor.

14. A jury could award punitive damages against Baldor if the jury concluded Baldor's conduct reflected a "conscious indifference to [the] foreseeable result" that Castillo would drive in a way that endangered others' physical safety.[26] Baldor argues the risk of Castillo causing injuries to Tighe was not foreseeable because Castillo never had been in an injury-producing accident before the collision in this case. Baldor cites *Jardel Co., Inc. v. Hughes* to support this assertion. In *Jardel*, a shopping mall employee sued the mall and its parent corporation after she was abducted and raped in the mall parking lot. The plaintiff alleged that by not hiring adequate security, the mall consciously was indifferent to the risk of such an

---

[25] Defendants have moved to exclude Plaintiff's expert, but that motion is not before the Court at this time, and plaintiff is entitled to the inference that the expert's testimony will be admitted
[26] *Littleton v. Young*, 1992 WL 21125, at *2 (Del. Super. Jan. 2, 1992).

attack. The *Jardel* court, however, noted that past criminal incidents at the mall primarily consisted of property crimes; no crime of this magnitude ever had occurred on mall premises.[27] Accordingly, the Court concluded the risk of the plaintiff's attack was not foreseeable.[28]

15.     *Jardel* is not dispositive here because a reasonable jury could consider Castillo's driving record and conclude an accident of this magnitude was foreseeable. Castillo's past accidents and violations sufficiently were severe to put Baldor on notice that an accident of this magnitude might occur. Castillo's conduct went beyond minor damage from "bumping property in tight quarters."[29] Castillo was cited for speeding at least eight times between 2007 and 2016.[30] He also exceeded the maximum hours of service at least forty-one times between May and August of 2015 to the point that Baldor flagged the issue as something it needed to address.[31] A reasonable jury could look at these facts and conclude an accident causing physical injury was foreseeable to Baldor, yet Baldor did not require Castillo to attend additional training or otherwise impose significant consequences. Additionally, Plaintiff's expert will testify that Baldor's failure to take remedial action went against industry safety standards. A reasonable jury considering these

---

[27] *Jardel*, 523 A.2d at 531.
[28] *Id.*
[29] *Smith v. Williams*, 2007 WL 2677131, at *4 (Del. Super. Sept. 11, 2007).
[30] Pl.'s Resp., Ex. B at 1-3.
[31] *Id.* at 3.

9

facts could conclude Baldor consciously was indifferent to the foreseeable risk of Castillo causing a collision that physically injured another person.

## III. Baldor can be held liable for punitive damages even if a jury concludes Castillo merely was negligent at the time of the accident.

16.     Defendants separately contend Baldor cannot be held liable for punitive damages if Castillo merely was negligent because "[u]nder the doctrine of vicarious liability, an agent's liability is the predicate for the principal's liability."[32]

17.     To support this proposition, Defendants cite *Schueler v. Martin*.[33] *Schueler*, however, never reached such a holding and does not support Defendants' assertion that Baldor cannot be found reckless absent a predicate finding that Castillo was reckless.  The Court can impose punitive damages against an employer for an employee's actions when there is "some showing of wrongdoing on the part of the employer."[34]  Specifically, punitive damages may be awarded if the employer was reckless in hiring or retaining an unfit employee.[35]

18.     Plaintiff's punitive damages claim against Baldor is not a vicarious liability claim; Plaintiff's claim seeks to hold Baldor directly liable for its own conscious indifference in supervising Castillo, not vicariously liable for Castillo's conduct.  Defendants are also mistaken in relying upon *Schueler* because the facts

---

[32] Defs.' Mot. at 7.

[33] 674 A.2d 882 (Del. Super. 1996).

[34] *Ramada Inns, Inc. v. Dow Jones & Co., Inc.*, 1988 WL 15825, at *1 (Del. Super. Feb. 9, 1988) (citing *DiStefano v. Hercules, Inc.*, C.A. No. 83C-N-24 (Del. Super. June 4, 1985)).

[35] *Id*. at *2 (citing RESTATEMENT (SECOND) OF TORTS § 909 (1979)).

are distinguishable from this case. In *Schueler*, a police officer brought suit against the City of Newark for injuries he sustained in a car accident with another officer who was pursuing a suspect.[36] The issue in the case was not vicarious liability but sovereign immunity. Under the Delaware Tort Claims Act, a government entity generally is immune from suit, but an employee still may be liable personally.[37] The *Schueler* court determined that the statute intended to preclude *respondeat superior* claims, and the plaintiff therefore could not recover punitive damages from the City for its employee's reckless or malicious conduct.[38] Unlike in *Schueler*, Defendants have cited no similar statutory bar to Baldor's liability. Even if Castillo merely was negligent, a reasonable jury could conclude that Baldor recklessly was indifferent in monitoring Castillo and in not requiring remedial training or imposing sanctions.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment is **DENIED** without prejudice to Defendants moving for a directed verdict at trial**.**

**IT IS SO ORDERED.**

*/s/ Abigail M. LeGrow*
Abigail M. LeGrow, Judge

---

[36] *Schueler*, 674 A.2d at 884.
[37] *Id*. at 886 (citing 10 Del. C. § 4011-12).
[38] *Id*. at 889.